## LATTIN *v.* GAMBLE.

1. ARBITRATION AND AWARD—AWARD BY MAJORITY—VALIDITY—SCOPE OF ARTICLES.

   The general rule is that where articles for a common-law arbitration by three arbitrators do not provide for an award by two of them, an award by two is not binding.

2. SAME—INTERFERENCE BY COUNSEL—EVIDENCE—SUFFICIENCY.

   On the issue of the validity of an award signed by only two of three arbitrators under articles not providing for an award by two, evidence examined, and *held*, that agreement by the third arbitrator was not prevented by interference by counsel for the party who appointed him.

3. SAME—CONDUCT OF COUNSEL—PROPRIETY.

   It was improper for counsel, in the absence of opposing counsel, to submit further argument to arbitrators, after being shown their proposed award, and, without knowing that further conference of the arbitrators was impossible, to privately express, or intimate, his opinion to the arbitrator chosen by his client.

4. PARTNERSHIP — ACCOUNTING — SALE OF ASSETS — WHAT INCLUDED.

   It is not presumable that cash in the hands of a receiver appointed to close up the affairs of a partnership was included or understood to be included in a sale of the assets.

Appeal from Oceana; Rose, J., presiding. Submitted June 17, 1908. (Docket No. 70.) Decided September 10, 1908.

Bill by Julia S. Lattin, administratrix of the estate of Sylvester Lattin, deceased, against Joseph E. Gamble and Charles Jensen for an accounting, and for the appointment of a receiver. From a decree for complainant, defendant Gamble appeals. Affirmed.

*C. B. Stevens*, for complainant.

*Rufus F. Skeels* and *F. E. Wetmore*, for appellant.

OSTRANDER, J.  Complainant is administratrix of the estate of Sylvester Lattin, deceased, and is his widow. She filed the bill in this cause, asking for an accounting and for the appointment of a receiver to take charge of and close up a mercantile business in which the estate was interested.  Before an answer to the bill had been filed, complainant and defendant Gamble agreed to arbitrate their differences, and made and signed articles for a common-law arbitration by three arbitrators; no provision being made for an award by two of them.  At the same time it was stipulated that the arbitration should not operate to dismiss the chancery suit, but that, unless the arbitration was completed and a decision rendered within a reasonable time, the chancery case should proceed to a hearing, "and, in case the arbitration is concluded and settlement made on that basis, then said Julia S. Lattin may dismiss said cause without costs."  Two of the arbitrators made and signed an award; the arbitrator chosen by complainant being the one who did not sign.  Complainant renewed her application for the appointment of a receiver.  In his answer defendant Gamble set up the arbitration proceeding, and prayed, as affirmative relief, that the award be decreed to be carried out, offering and tendering execution and delivery of all the papers required to be executed and delivered by him in accordance with the award.  The court refused to enforce it.  From a final decree upon the merits defendant Gamble has appealed.

His contention is that it was error to refuse to enforce the award.  Counsel are agreed that the general rule requires an award under a submission like the one before us to be signed by all of the arbitrators.  But it is insisted— I quote from the brief:

"This case is taken out of the general rule, for the reason that the failure of Mr. Butler to sign the arbitration award was caused by the conduct of Mr. Stevens, the solicitor for the complainant, who chose Mr. Butler for their arbitrator.  It does not seem to us that there can be any other or different conclusion than that Mr. Stevens was solely responsible for that failure."

This was the ground urged at the hearing, with references to testimony supposed to establish the fact that the solicitor for complainant was responsible for the action of the third arbitrator. It is a ground not set up in the answer and cross-bill, and was asserted for the first time during the taking of proofs. We do not find that it was supplied by amendment to the cross-bill. It appears from the record that the court was of opinion that amendments might be made to conform with the proofs, and, as opposing counsel do not object, we assume the failure to make formal amendment was an inadvertence. It is evident that, if the fact is not found in agreement with appellant's contention, there is no occasion to consider other objections to the award. The contention of appellant not only involves the merits of the particular matter, but also, in some degree, the professional conduct of the solicitor for the complainant. We have examined the record with care, with the result that we find ourselves in agreement with the court below. It is not necessary to set out the testimony. The three arbitrators heard testimony, listened to arguments by counsel, and proceeded to deliberate. After a session, which, with adjournment for dinner, continued from about 10 o'clock in the forenoon until after 4 in the afternoon, two of them reached conclusions to which the other did not assent. The disagreement being evident, the third arbitrator absented himself from the sitting, which was at Pentwater, after stating that he must leave for Minneapolis, Minn., the next morning. Thereafter, during the same day, two of the arbitrators exhibited to the solicitor for complainant the award they were prepared to make. He claimed that it was unjust, said he did not believe the judge of probate would approve it (it was his opinion that any award concerning the affairs of the estate of a deceased person to which the administratrix was a party must be approved by the judge of probate), and he pointed out to the two arbitrators, in the absence of opposing counsel, what he claimed were errors. It seems to be now conceded that they were errors, and

they were later, on that day or the next morning, corrected. They related to some at least of the matters about which the arbitrators had disagreed. After the solicitor for complainant had so expressed himself, he saw and talked with the third and dissenting arbitrator on the street. He testified as follows:

"*Q.* And did you then in your conversation with Mr. Butler say to him that it was an unjust award, and intimate to him that you didn't want him to sign it?

"*A.* I presume I did."

This was after the arbitrator had told him he would not sign the award which the others had agreed to and before it was known that the proposed award would be in any respect changed. Later Mr. Butler declined the invitation of one of the other two arbitrators to again go into conference, ordered his horse, and returned to Hart. Some evidence was thereafter taken by the other arbitrators, and the next day the award was signed. The record supports the finding of the trial court that:

"The award was not presented to the arbitrator Butler for his approval. The two arbitrators did not wait for him to return from Minneapolis before they signed it. In fact, the award was signed by the two arbitrators on the theory and belief that it would be valid and binding if made by the majority of the board of arbitrators, and this is the sole position and claim made by defendant in his cross-bill. No claim is there made that complainant or her counsel had done anything by which she would be estopped in a court of equity from urging the validity of this award."

No one can say, because no one can know, that Mr. Butler would in any event have agreed with the others in the award which was made. It is clear that the conduct of counsel complained about was not the cause of the disagreement of the arbitrators, and we cannot say that it induced Mr. Butler to decline further conference. We conclude, therefore, there was no award, and that the court below was right in refusing to enforce the conclusions of the two arbitrators. While it may be presumed

that the statement of counsel to the arbitrator was called out by the statement of the arbitrator that he would not sign the award of the other two, and that it was influenced, also, by his knowledge of the proposed award, by what he believed to be errors therein, and by lack of knowledge that the two arbitrators would recede from the position they had taken, the circumstance was calculated to arouse, as it has, the suspicion of those representing opposing interests. We shall assume that in sending for the solicitor for complainant and in exhibiting to him the proposed finding, in listening to his criticisms thereon, and in later considering evidence not adduced before all of the arbitrators, the two arbitrators were entirely innocent of any wrong intention or of impropriety. We are obliged to say that those rules of conduct to the observance of which the profession is bound were violated when one of the solicitors, in the absence of the solicitor for the other party, submitted further argument, and when, without knowing that further conference of the arbitrators was impossible, he privately expressed, or intimated, his opinion to the arbitrator chosen by his client. Whether counsel was unfriendly to those rules, which we do not assume, or only forgetful of them, the apparent effect is the same.

While this court is not asked to review the accounting had in the court below, it is claimed by appellant that the decree should be modified and the receiver directed to pay the sum of $612.82 to one Neils Jensen, to whom upon his bid the assets of the firm were sold. This was money in the hands of the receiver at the time of the sale. It seems incredible that, in a sale of partnership assets, cash would be included or be understood to be an asset to be sold.

We are satisfied with the decree below; and it is affirmed, with costs.

MONTGOMERY, HOOKER, MOORE, and CARPENTER, JJ., concurred.