FLINT P. SMITH BUILDING CO. *v.* INDUSTRIAL SAVINGS
BANK.

1. ARBITRATION AND AWARD—AWARD NOT VALID UNLESS CONCURRED
IN BY ALL ARBITRATORS.

   Where a lease provided that in case the parties thereto
   were unable to agree upon the rent to be paid, "then each
   of said parties shall select one arbitrator, and the two
   arbitrators so selected shall select a third arbitrator, and
   the three arbitrators so selected shall fix and determine
   the rent to be paid," the finding of the arbitrators to be
   final and binding upon the parties, an award concurred in
   by two of the arbitrators only was not valid, since the
   language of the lease clearly provided for an award by
   three arbitrators.

2. SAME—AWARD OF ARBITRATORS NOT BINDING ON COURT.

   On appeal by the lessee from the decree of the court be-
   low fixing the rent at $9,000 a year, its contention that,
   even if the award of the two arbitrators fixing the rent
   at $6,000 a year was not binding on the parties, the
   decree should have fixed the rent in accordance with that
   award, cannot be sustained, where the amount fixed in
   the decree is justified by the record.

Appeal from Genesee; Williams (William B.), J.,
presiding.  Submitted January 19, 1922.  (Docket
No. 105.)  Decided June 5, 1922.  Rehearing denied
July 20, 1922.

Bill by the Flint P. Smith Building Company against
the Industrial Savings Bank to set aside an award
of arbitration, and to determine the rent to be paid
under a lease.  From a decree for plaintiff, defendant
appeals.  Affirmed.

*George W. Cook* (*Charles A. Withey,* of counsel), for
plaintiff.

*Farley & Selby, Leo M. Butzel* and *William L. Car-
penter* (*Stevenson, Carpenter, Butzel & Backus,* of
counsel), for defendant.

MOORE, J. The chancellor filed a written opinion in this case reading as follows:

"Plaintiff, a corporation, is the owner of lot 10, block 1, in the city of Flint, Michigan, having a frontage of 33 feet on Saginaw street and a depth of about 150 feet along Union street on which there is a 9-story office building known as the Flint P. Smith Building with basement, the ground floor of which was constructed especially for a banking business with lobby in front leading to the elevators and the bank. September 23, 1912, the then owners of said property, grantors of plaintiff, leased to the Industrial Savings Bank for the purpose of conducting a general banking business, the ground floor in the rear of the lobby in the Flint P. Smith Building, the vaults in the basement to said building, with the right to ingress and egress thereto, and so much of said basement as may be necessary to use said vaults, the use of the lobby in said building for ingress and egress to the rear thereof, with the right to use the windows therein for advertising banking business of said Industrial Savings Bank, and also the right and privilege of using the front of said building to display the sign or signs of said bank for the period commencing with the time when said building should be made ready for occupancy by said bank and extending to and including June 30, 1939.

"By the terms of the lease lessor agreed to heat said leased premises when necessary, and to furnish said lessee with city water and janitor service for the corridors of the bank. The premises leased to the bank were completed ready for occupancy May 1, 1913, and they took possession on that date. The term for which said premises was leased was divided into 5 rental periods, the first 4 periods to consist of 5 years each and the fifth period for the unexpired portion of the time. The rent for the first period was fixed by the lease at $2,000 per year, payable monthly in advance.

"By the terms of the lease, the rent for the remaining rental periods is to be determined for each term in advance by agreement between the parties, and in case the parties were unable to agree upon the rent to be paid, then each of said parties should select one

arbitrator, and the two arbitrators so selected should select a third, and the three arbitrators so selected should fix and determine the rent to be paid by the bank to the lessors for the ensuing rental period; that the arbitrators chosen to fix the rent for any rental period should as a basis for fixing the rent for that period, take into consideration the character of the property rented, its location, the heating and services rendered by the lessors, the increase or decrease in the population of the city and the then general rental values of business property in the business district in the city of Flint, and the finding of the arbitrators chosen to fix the rent for each rental period should be final and binding upon all of said parties for the period for which it was fixed, and during such rental period said bank should pay to the lessors, and the lessors should receive the rent so fixed and determined by the arbitrators chosen for that period.

"The first 5-year rental period having expired on the 30th day of April, 1918, and the owners of said building and said Industrial Savings Bank not being able to agree upon the rent which should be paid by said bank to said owners for the ensuing 5-year period, thereupon in pursuance of the terms of said lease the owners of said building and said bank proceeded to have the rent fixed by arbitrators chosen in the manner prescribed in said lease, and John J. Carton, Charles M. Greenway and John L. Pierce were chosen as arbitrators.    The arbitrators so chosen were unable to agree on the rent to be paid by defendant to plaintiff for said premises, for the 5-year rental period commencing May 1, 1918, Messrs. Carton and Greenway signed an award fixing the amount at $6,000 per year, and Mr. Pierce signed a statement to the effect that he refused to concur in said award, giving his reasons therefor.    Plaintiff, claiming that the award is void because not concurred in by all three of the arbitrators, filed this bill to have the same judicially determined to be void, and to have the court determine the rent that should be paid by defendant to plaintiff for the 5-year period commencing May 1, 1918.    Defendant in its answer insists that the award, though concurred in by only two of the arbitrators, is valid and has tendered the rent at the rate fixed by the award, which plaintiff has refused to accept.

"I am of the opinion that the award is invalid. That in submitting this matter to three arbitrators it was contemplated by the parties that they should have an award concurred in by all of them. A majority of the arbitrators may not render a valid award. *Lattin* v. *Gamble*, 154 Mich. 177. Our statute provides for an award by a majority of the arbitrators. 3 Comp. Laws 1915, § 13652. This is a part of the statute providing for a statutory award. I think in other States where there is a similar statute the decisions of the court are uniform to the effect that the statute applies to statutory awards only.

"It is suggested in the bill that there were some acts on the part of Mr. Carton, one of the arbitrators, on account of which the award should be held invalid. There is nothing in the testimony that should give rise to even a suspicion of misconduct on the part of Mr. Carton, and I base my conclusion that the award is invalid entirely on the fact that it was concurred in by but two of the arbitrators.

"We now come to the real live issue in this case, viz., what rent should be paid by defendant to plaintiff for the 5-year rental period from May 1, 1918, for the premises occupied by it, and the services rendered by plaintiff. This must be determined by conditions that would affect the rental value existing May 1, 1918, and which might reasonably be expected to obtain during the 5-year period in view of past events and future probabilities. The court in fixing the rental must be governed by the limitations in the lease placed on the arbitrators in that regard. I find myself embarrassed at the threshold of this inquiry. One who can forecast rental values in Flint in abnormal times for a period of 5 years must have occult power.

"Counsel in the case in elaborate and well considered briefs reach results that are $8,000 apart on the yearly rental. I knew they would not intentionally lead the court astray. The testimony of 12 reputable business men of Flint varies from $4,800 to $18,000 per year as to what the rent should be fixed and determined as of May 1, 1918, on the basis stipulated in the lease for the 5-year period. I have read the testimony with care, and I am unable to find a test which, when applied, satisfies me that I have

reached a result that may be more than approximately mathematically correct.

"There was no building in Flint May 1, 1918, with which the building in question could be compared. It was *sui generis*. Comparing rental value per square foot space in this building and old buildings that were required to be completely remodeled before suitable for occupancy by merchants pretending to be up-to-date, throws but little light on the merits of this controversy. I am convinced that the rental value of the ground floor occupied by the bank is enhanced by having offices in the floors above occupied by those engaged in various lines of business, and that the corridor between the bank and the street does not detract from the desirability of the bank quarters for banking purposes. I am satisfied that the amount fixed by Mr. Carton and Mr. Greenway is too small. If I were authorized to fix the rental at what I thought it ought to be, the amount would be less than it will be. I believe the general rental values in the business district in Flint in May, 1918, were too high, and if so, then a rental for the premises in controversy fixed on the basis of the general rental value of other business property in Flint in May, 1918, must of necessity be too high, at least when viewed as a conservative business proposition.

"There runs through the testimony of Mr. Carton and Mr. Greenway the thought that rents of business property in May, 1918, were too high, and they probably fixed the amount at what they thought it ought to be as an abstract proposition rather than as compared with rents that they believed to be exorbitant. On the other hand, those who testified that the rental should be from $12,000 to $18,000 per year were doubtless unwittingly influenced by the fact that an unprecedented boom in Flint had brought about conditions when one could get as rental for business property in Flint much more than they would have thought of asking in normal times.

"I think there must be somewhere between these two extremes where the just legal rights of the parties to this controversy may rest. I fix the amount of rent to be paid by defendants to plaintiff at $9,000 per year from May 1, 1918, for the ensuing 5 years. Said sum to be paid $750 monthly in advance, with interest on

the deferred monthly payments at 5 per cent. per annum."

A decree was entered in accordance with the opinion. The case is brought to this court by appeal.

The first question presented is, Was the award valid? Counsel insist it is, we quote from the brief:

"Messrs. Carton, Greenway and Pierce were appraisers, not arbitrators, and if two arbitrators could make an appraisal, the appraisal made by Messrs. Carton and Greenway was valid.

"The distinction between arbitrators and appraisers and the difference of their official duties is nowhere pointed out with greater clearness than in *Omaha Water Works Co.* v. *City of Omaha,* 89 C. C. A. 205, 162 Fed. 225 (15 Ann. Cas. 498)."

In considering this quotation it may be well to refer to the lease:

"The rent to be paid by said lessee to the said lessors for each of the remaining rental periods shall be determined in advance by agreement between the parties for the ensuing rental period, and in case the parties hereto are unable to agree upon such rent, then each of said parties shall select one arbitrator and the two arbitrators so selected shall select a third arbitrator and the three arbitrators so selected shall fix and determine the rent to be paid by the said lessee to the said lessors for the ensuing rental period. As a basis for fixing said rent said arbitrators shall take into consideration the character of the property rented, its location, the heating and service rendered by said lessors to said lessee, the increase or decrease of the population of the city and the then general rental values of business property in the business district of the city of Flint. The findings of said arbitrators so chosen for each rental period shall be final and binding upon the parties hereto, and said lessee agrees to pay to said lessors the rent so agreed upon between the parties or so fixed by said arbitrators, and the said lessors agree to receive the amount so agreed upon or the amount so fixed by said arbitrators as the rent for said premises for said period."

It is evident that the parties to the lease had provided for the selection of arbitrators and for arbitration in case of disagreement, and that "the three arbitrators so selected shall fix and determine the rent to be paid." Both parties agreed that "the findings of said arbitrators so chosen" should be final and that they would both abide by the award. The language of the lease is not ambiguous and as to this feature of the case the chancellor was clearly right.

Was the rental fixed in the decree wrong? It is argued and we again quote from the brief:

"Even if the appraisal by two appraisers was not binding, the trial judge should have fixed the rent in accordance with that appraisal."

It is urged that the two appraisers, as counsel call them, followed the provisions of the lease and that the decree should follow their findings. The three arbitrators were each sworn as witnesses. Two of them testified that $6,000 a year was a fair rental. The third one thought $12,000 was a fair rental. More than 30 witnesses were sworn; they differed greatly in their estimates of the rental value, 8 of them placing it at $12,000 and upwards. Two of them fixing it at $18,000 a year and one of them at $20,000 a year. An examination of the entire record does not satisfy us the decree should be disturbed.

It is affirmed, with costs to the appellee.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.