FLINT P. SMITH BUILDING CO. *v.* INDUSTRIAL SAVINGS
BANK.

LANDLORD AND TENANT — ANNUAL RENTAL FIXED BY COURT AT
REASONABLE AMOUNT.

On appeal from a decree of the court below fixing the
annual rental of the ground floor of a business block for
banking purposes at $18,500, the amount is reduced to
$13,000 as being a reasonable amount in view of the fact
that it will yield a return of 8 per cent. net on the sound
value of the property, and will yield as much per square
foot as the best business lease in the city.[1]

Appeal from Genesee; Richter (Theodore J.), J.,
presiding.    Submitted January 23, 1925.    (Docket
No. 136.)    Decided April 24, 1925.    Rehearing denied
July 16, 1925.

Bill by the Flint P. Smith Building Company against
the Industrial Savings Bank to determine the rent to
be paid under a lease.    From the decree rendered,
both parties appeal.    Modified and affirmed.

*George W. Cook,* for plaintiff.

*Roy E. Brownell* (*Guy W. Selby* and *Charles A.
Withey,* of counsel), for defendant.

BIRD, J.    The plaintiff is the owner of a modern
9-story office building in the city of Flint.    On Sep-
tember 23, 1912, plaintiff's grantor leased the lower
floor to defendant for a term of years ending on June
30, 1939.    Defendant took possession on May 1,
1913.    By the terms of the lease defendant acquired
the entire lower floor of the building except the lobby,
which was 35 feet deep and extended across the en-

[1]Landlord and Tenant, 36 C. J. § 1196.

tire front.    The defendant had the use of the lobby
in common with the tenants · on the upper floors.
The elevators are located therein, as well as a cigar
stand.    Defendant also acquired the use of the vaults.
in the basement and sufficient of the basement to make
use  of  them.    The lease included heating, water,
janitor service and the privilege of using the windows.
and the outside front for the purpose of advertising.
The lease was divided into five periods, four of which.
were for five years each, and the fifth being for the
balance of the lease.

The lease provided for a refixing of the rent at
the end of each period for the succeeding period.    The
method provided in the lease for determining the rent
is as follows:

"The  rent  to  be  paid  by  said  lessee  to  the  said
lessors for each of the remaining rental periods shall
be determined in advance by agreement between the
parties for the ensuing rental period, and in case the
parties hereto are unable to agree upon such rent,
then each of said parties shall select one arbitrator
and the two arbitrators so selected shall select a third
arbitrator and the three arbitrators so selected shall
fix and determine the rent to be paid by the said lessee
to the said lessors for the ensuing rental period.    As
a basis for fixing said rent said arbitrators shall take
into consideration the character of the property rented,
its location, the heating and service rendered by said
lessors to said lessee, the increase or decrease of the
population  of  the  city  and  the  then  general  rental
values  of  business  property  in  the  business  district
of the city of Flint.    The findings of said arbitrators
so chosen for each rental period shall be final and
binding upon the parties thereto, and said lessee agrees
to pay to said lessors the rent so agreed upon be-
tween the parties or so fixed by the said arbitrators,
and the said lessors agree to receive the amount so
agreed upon or the amount so fixed by said arbitrators
as the rent for said premises for said period."

The rent for the first five years was agreed upon

at $2,000 a year.   The annual rent for the second five-year period was determined by the court to be $9,000 (218 Mich. 374).   In 1923 the parties were unable to agree on the rent for the succeeding period. Resort was had to arbitration, but after laboring with the question for some time the arbitrators could not agree, so this bill was filed and proofs taken bearing on the question of reasonable rent.   After hearing the testimony of several witnesses, who were well qualified by business experience to testify, the chancellor fixed the annual rent at $18,500.   Apparently this conclusion did not satisfy either party, as both have appealed.

Notwithstanding the very excellent briefs which counsel have filed, the question of what is a reasonable rent for this property is a difficult one.   The briefs have suggested various methods of determining the question.   It may be helpful to examine more than one method.   The testimony is very persuasive that the sound value of the building depreciated to May 1, 1923, is $300,000.

Adding to this the value of the land would make the total investment worth approximately $400,000. It appears to be conceded that the investment should yield an annual net return of 8 per cent.   On this basis the annual net earnings of the building should be $32,000.

Mr. Newhall, the manager of the building, testified that the gross income of the building for 1923 was $65,349.86, and to this should be added the rent from May 1, 1923, which was unpaid; that the cost of operation was $46,283.99.   If we assume the rent for 1923 to have been $13,000, the gross income of the building for that year would have been $75,349.86.   Deducting cost of operation therefrom, the net income for 1923 would be $29,065.87.   If we deduct an item of $4,000, carried as miscellaneous, in the cost of operation, which Mr. Newhall was unable to explain,

and deduct certain counsel fees for this proceeding, and two-thirds of certain repair costs which are made every three years, and were made in 1923, the net income would easily amount to 8 per cent.

This method is a favorable one for plaintiff, as the building was constructed in 1912, when materials and labor were low, and the entire cost was only $150,000. In view of this rapid advance in the value of the building we need not give much serious attention to the question of depreciation.

The parties, in their testimony and arguments, have given us some light on other leases in the vicinity. It appears to be conceded that the most desirable business locations are in the vicinity of Saginaw and Kearsley streets. The plaintiff's building is situate one block north of this location. The Buckingham lease, which appears to be the choicest business location at this intersection, provides for approximately $3.50 per square foot. The Reed & Goodwin lease, which is just north of Saginaw and Kearsley on the west side of the street, reserves a rental of substantially $2.50 per square foot. The Flint clothing store, the first building south of plaintiff's building, rents for substantially $2.70 a square foot. The Moffett-McClellan lease on premises a few feet north of plaintiff's building, rents at approximately $1 per square foot. The Orpheum lease covers a building on Saginaw between First and Second streets at $2 per square foot. It is true that none of these buildings is situate on the ground floor of a modern office building, but, on the other hand, they are in much better locations than plaintiff's building.

On the basis of 1923 operation of plaintiff's building, assuming the rent to be $13,000, defendant would pay $3.50 per square foot for the bank floor of 3,200 feet, and $1 a square foot for that part of the basement floor which it occupied.

The "front foot" cost view is presented. This comparison is so full of exceptions and varying conditions that it is not very helpful.

The changes in the assessment from 1918 to 1923 are pointed out. If all assessors obeyed the constitutional and legislative provision of assessing real property at its cash value, this view would be more reliable, but many of the assessors have apparently never heard of these provisions, consequently their annual assessments are not certain enough to be very persuasive on the question of value.

It is shown that the population of Flint has increased from 90,000 in 1918 to approximately 123,000 in 1924. It is stated, and not contradicted, that if the rent were increased in the same ratio as the population has increased, the lease would yield annually $13,500. But the population of Flint is a mercurial one and depends, to a large extent, on the prosperity of its one large industry.

After considering the several methods of appraisal which have been suggested, and giving heed to the elements stipulated in the lease to be considered, we think that a reasonable annual rental from May 1, 1923, to May 1, 1928, is $13,000. This, as we view it, will return at least 8 per cent. net on the sound value of the property, and will yield as much per square foot as the best business lease in the city.

The decree made by the trial court may be modified in accordance herewith, and affirmed. Defendant will recover its costs of this court. Plaintiff will recover interest at 5 per cent. on unpaid rentals.

McDONALD, C. J., and SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred. CLARK, J., concurred in the result.